744 So.2d 601 (1999)
Pedro Martinez YANEZ, Appellant,
v.
STATE of Florida, Appellee.
No. 98-00734.
District Court of Appeal of Florida, Second District.
November 24, 1999.
*602 Jeffrey Sullivan, Bartow, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Jenny S. Sieg, Assistant Attorney General, Tampa, for Appellee.
PER CURIAM.
Appellant, Pedro Martinez Yanez, appeals from his convictions and sentences for felony murder and armed burglary of a structure. Appellant asserts that there was insufficient evidence presented at trial to support his convictions, and that the trial court erred in allowing the jury to read an English translation of his Spanish interview conducted by the arresting officer. We affirm appellant's conviction for armed burglary of a structure; however, we reverse appellant's felony murder conviction because the evidence presented at trial did not support his conviction.
Appellant was convicted of felony murder and armed burglary of a structure due to the death of one of his co-conspirators during the commission of the burglary. The trial court sentenced appellant to life in prison for the felony murder conviction, and 93.5 months in prison for the armed burglary of a structure conviction. At the close of trial, appellant moved for a judgment of acquittal which was denied.
The evidence adduced by the State below established that in the evening hours on February 25, 1995, Antonio Vega, Jose Mares, Pedro Garcia, Roy Venegas, and appellant drove to a house in Manatee County with the intent to enter and steal marijuana which they had learned was being stored inside. Three of the conspirators were armed. Upon reaching the house, Vega, Venegas, Mares, and appellant got out of their pick-up truck and headed toward the house while Garcia remained in the truck. Appellant and Venegas were both carrying handguns. Venegas *603 had given Mares a rifle and instructed him to remain outside near the window as a look-out and "shoot to kill" anyone approaching the house. Vega, Venegas, and appellant entered the house through a window. Appellant then picked up two bags of marijuana and went back outside. While outside, appellant noticed a car slowly approaching the residence. Appellant became concerned and hid behind a tree. The car initially passed the house; however, as it approached the end of the street, the car turned around and headed back toward the house. The other conspirators inside the house became scared and ran out the front of the house with bags of marijuana. That was when shots were fired.
At some point, Mares and appellant both began running, and Mares dropped his rifle at the scene. Appellant and Mares were able to make it to the pick-up truck driven by Garcia, and the three conspirators attempted to escape the scene. Vega and Venegas both had been shot and were left behind by the other burglars. Apparently during this time, Ruben Huerta and his son armed themselves with guns and came outside of their home which was across the street from the burglarized residence. The Huertas chased the burglars' pick-up truck in their car and were able to run the truck into a nearby pond. Appellant and the others fled on foot. The Huertas then inexplicably returned to the house and proceeded to remove bags of marijuana from the residence, even the bags that were near the dead body of Antonio Vega. They then hid the marijuana in another vehicle before the police arrived. The Huertas removed approximately 200 pounds of marijuana from the residence and later stated that they intended to sell the marijuana.
The actual events that occurred the evening of the burglary are unclear. The evidence established that Mares fired his rifle; however, there was no evidence establishing at whom Mares was shooting or whether he was the only person firing a gun. During the course of the gunfire, Vega was killed by a gunshot wound through his back, and Venegas was wounded.
The State's theory was that Jose Mares, one of appellant's co-conspirators, mistakenly shot and killed Antonio Vega during the commission of the burglary. The State's case was based entirely upon circumstantial evidence. The defense's theory was that someone other than Mares shot and killed Vega as an act independent of the burglary. We believe the State's evidence failed to exclude beyond a reasonable doubt the defense's version of events.
When a case is based upon circumstantial evidence, the State's evidence must not only be consistent with the defendant's guilt, but must also be inconsistent with any reasonable hypothesis of innocence. See McArthur v. State, 351 So.2d 972, 976 (Fla.1977). A defendant's motion for judgment of acquittal should be granted in a circumstantial evidence case "if the state fails to present evidence from which the jury can exclude every reasonable hypothesis except that of guilt." State v. Law, 559 So.2d 187, 188 (Fla.1989).
At the crime scene the police found a rifle on the ground about 400 feet from the house and two handguns in the pick-up truck that was still partially submerged in the pond. There were no fingerprints on the rifle and no evidence that the rifle found at the scene was the rifle Mares possessed during the robbery. Additionally, the medical evidence failed to prove that the rifle found at the scene was in fact the weapon that killed Vega. The medical examiner could only testify that Vega's wounds were consistent with wounds that could have been inflicted by the rifle found on the scene. Thus, the State at most proved that Mares fired his rifle, Vega was killed, and the wounds Vega died from were consistent with a high-velocity rifle. While this evidence might suggest that Mares shot Vega accidently, the evidence is not inconsistent with appellant's theory *604 and is not sufficient to exclude every reasonable hypothesis except that of guilt. See Law, 559 So.2d at 188 ("Where the only proof of guilt is circumstantial, no matter how strongly the evidence may suggest guilt, a conviction cannot be sustained unless the evidence is inconsistent with any reasonable hypothesis of innocence."). Thus, the trial court erred by not granting appellant's motion for judgment of acquittal.
Appellant's second claim is that the trial court erred in allowing the jury to read the English translation of his Spanish confession. We agree that the trial court erred in allowing the jury to read the English translation because there was no evidence in the record that the translation was made by an interpreter sworn to give a faithful and accurate translation. See Ortega v. State, 721 So.2d 350 (Fla. 2d DCA 1998); Hutchens v. State, 469 So.2d 924 (Fla. 3d DCA 1985). Although the trial court erred in allowing the jury to view the transcript, this error is still subject to a harmless error analysis. Applying the standards of that test, we conclude that the error was harmless because the permissible evidence presented at trial conclusively proved that appellant participated in the burglary. Based on the evidence presented at trial, we find that there was no reasonable possibility that the error contributed to appellant's conviction for armed burglary. See State v. DiGuilio, 491 So.2d 1129 (Fla.1986).
We therefore reverse appellant's conviction and sentence for felony murder, affirm his conviction for armed burglary, and remand for resentencing.
Reversed and remanded for resentencing.
PATTERSON, C.J., NORTHCUTT and STRINGER, JJ., Concur.